FOX & ASSOCIATES, INC v HAYES TOWNSHIP

Docket No. 91255. Submitted March 10, 1987, at Lansing. Decided
September 8, 1987. Leave to appeal applied for.

Fox and Associates, Inc., owner of real property in Hayes Town-
ship, Charlevoix County, including frontage on Lake Charle-
voix, proposed to the township, pursuant to the planned unit
development provision of the township zoning ordinance, to
develop a residential condominium development on the prop-
erty. The township rejected the proposal because it failed to
comply with the zoning provisions regulating funnel develop-
ment and the amount of dock space which may be installed.
Fox and Associates, Inc., brought an action in the Charlevoix
Circuit Court against Hayes Township alleging, among other
things, that the zoning provisions in question were invalid
because they were not authorized by the Township Rural
Zoning Act. Sally A. Ginn, a resident lakefront property owner,
was permitted to intervene. The court, Robert C. Livo, J.,
denied plaintiff's motion for partial summary disposition, find-
ing that the restrictions in question were a reasonable exercise
of the legislative authority granted by the Township Rural
Zoning Act. Plaintiff appealed by leave granted.

The Court of Appeals *held:*

1. The Township Rural Zoning Act does not grant authority
to regulate riparian rights. Thus, the township's zoning provi-
sion limiting boat dockage and funnel development are invalid.

2. In light of the holding, it was unnecessary to consider
whether the subject was preempted by the Inland Lakes and
Streams Act.

Reversed and remanded.

McDONALD, J., dissented. He would hold that the Township
Rural Zoning Act grants to townships the authority to regulate
riparian rights. He would affirm.

REFERENCES

Am Jur 2d, Statutes §§ 142 *et seq.*

Am Jur 2d, Zoning and Planning §§ 25 *et seq.*

Supreme Court's view as to weight and effect to be given, on
subsequent judicial construction, to prior administrative construc-
tion of statute. 39 L Ed 2d 942.

Comment note.—Exclusionary zoning. 48 ALR3d 1210.

1. TOWNSHIPS — ZONING — POLICE POWER.

   Townships have no police power of their own; they may exercise such power only by virtue of a grant by the state, and in the case of zoning, power is extended through zoning enabling acts.

2. ZONING — PRESUMPTIONS — BURDEN OF PROOF.

   Zoning ordinances are presumed valid, and the burden is on the party attacking a zoning ordinance to show by competent evidence the lack of a substantial relationship between the restriction of the ordinance and public health, safety or the general welfare of the community.

3. STATUTES — JUDICIAL CONSTRUCTION.

   A reviewing court, when interpreting a statute, is to give effect to the intent of the Legislature, giving words their ordinary meanings, and if the language of the statute is clear it is assumed that the Legislature intended the plainly expressed meaning and the statute must be enforced as written.

4. STATUTES — JUDICIAL CONSTRUCTION.

   It is a general rule of statutory construction that the inclusion of a thing by specific mention excludes that which is not mentioned.

5. ZONING — TOWNSHIPS — RIPARIAN RIGHTS — TOWNSHIP RURAL ZONING ACT.

   The Township Rural Zoning Act does not grant townships the authority to regulate riparian rights (MCL 25.271 et seq.; MSA 5.2963[1] et seq.).

*Marco, Eagen, Kennedy & Timmis* (by *George A. Peck* and *Richard M. Miettinen*), and *Marco, Litzenburger, Smith, Brown & Wynn, P.C.* (by *Seberon Litzenburger*), for plaintiff.

*Peter W. Steketee* and *McTaggart & Arner,* for defendant.

*Ginn, Kramer, Jacobson & Burnstein, P.C.* (by *Marty A. Burnstein* and *Cheryl K. Scott*), for Sally A. Ginn.

Amicus Curiae:

*Reid, Reid, Perry, Laskey, Hollander & Chal-*

*mers, P.C.* (by *John R. Fifarek* and *Joseph H. Hollander*), for Michigan Lakes and Streams Association, Inc.

Before: SAWYER, P.J., and D. E. HOLBROOK, JR., and McDONALD, JJ.

SAWYER, P.J. Plaintiff is a Michigan corporation, owner in fee simple of certain real estate located in Hayes Township, Charlevoix County, commonly known as the "Camp Charlevoix" property and consisting of 338 acres of land, including 2800 feet of Lake Charlevoix frontage. This property is zoned R-1 pursuant to the Hayes Township zoning ordinance, the most restrictive residential classification.

Plaintiff proposed to the township to develop a residential condominium development on the property pursuant to the "planned unit development" (PUD) provision of the township zoning ordinance, being § 6.01 of the ordinance. The PUD proposal was revised and presented to the township at several township meetings. At a special meeting of the township planning commission held on September 11, 1984, the proposal was rejected because it failed to comply with provisions of § 5.13(A) and (B) of the zoning ordinance. Those provisions of the zoning ordinance purport to regulate the building of structures near the shoreline and regulate the amount of dock space which may be installed.

On January 8, 1985, plaintiff filed a complaint in circuit court alleging, inter alia, that § 5.13(A) and (B) of the zoning ordinance is invalid and improperly enacted inasmuch as such regulations are not authorized under the provisions of the Township Rural Zoning Act, MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*

Thereafter, plaintiff filed a motion for partial

summary disposition pursuant to MCR 2.116(C)(9) and (10), on the grounds that § 5.13(A) and (B) is unconstitutional and invalid because it is not authorized under the TRZA, because it deprives plaintiff of due process and because it is contrary to the law set forth in OAG, 1981-1982, No. 6070, pp 652-655 (May 15, 1982).

The trial court issued a written opinion denying the motion for partial summary disposition. The trial court found that the restrictions in § 5.13 of the zoning ordinance were a reasonable exercise of the legislative authority granted by the TRZA as they regulate, but do not prohibit, development to achieve a valid public interest: namely, conservation of water, a natural resource. The trial court determined that the ordinance was constitutionally valid both on its face and as applied.

Plaintiff now appeals by leave granted and we reverse.

This Court is presented with two questions to address. First, we must determine whether defendant's regulation by zoning ordinance of dock space along a lake is authorized by the TRZA. Second, we are asked to determine whether a township may regulate dock space, or whether regulation of dock space is preempted by the state pursuant to the Inland Lakes and Streams Act, MCL 281.951 *et seq.*; MSA 11.475(1) *et seq.* However, because of our resolution of the first issue, we decline to address the second.

I

Townships have no police power of their own. They may exercise such power only by virtue of a grant by the state. In the case of zoning, power is extended through zoning enabling acts. *Davis v Imlay Twp Bd,* 7 Mich App 231; 151 NW2d 370

(1967); *Lake Twp v Sytsma,* 21 Mich App 210; 175 NW2d 337 (1970); *Brandon Twp v North-Oakland Residential Services, Inc,* 110 Mich App 300; 312 NW2d 238 (1981). The TRZA, MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.,* is the basic enabling act which grants townships the power to pass ordinances concerning zoning. *Lake Twp, supra; The Detroit Edison Co v Richmond Twp,* 150 Mich App 40; 388 NW2d 296 (1986). The TRZA is a broad grant of power and authority to townships to zone for the "public health, safety, and welfare." *Delta Charter Twp v Dinolfo,* 419 Mich 253; 351 NW2d 831 (1984).

Generally, a zoning ordinance is presumed valid, and the burden is on the attacking party to show by competent evidence the lack of a substantial relationship between the restriction of the ordinance and public health, safety or general welfare of the community. *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957); *Lutheran High School Ass'n v Farmington Hills,* 146 Mich App 641; 381 NW2d 417 (1985).

The question before us appears to be one of first impression. Accordingly, our analysis must begin with the principles of statutory construction. The primary rule of statutory construction is to give effect to the intent of the Legislature that enacted the statute. *Borkus v Michigan National Bank,* 117 Mich App 662; 324 NW2d 123 (1982). The language of the statute is the best source for ascertaining this intent. *Great Lakes Steel Division of National Steel Corp v Public Service Comm,* 143 Mich App 761; 373 NW2d 212 (1985). Words should be given their ordinary meanings. If the language of the statute is clear, it is assumed that the Legislature intended the plainly expressed meaning and the statute must be enforced as written. *Bailey v DAIIE,* 143 Mich App 223; 371

NW2d 917 (1985). If a statute is clear and unambiguous on its face, there is no room for statutory construction or interpretation of that statute. *Detroit v Redford Twp*, 253 Mich 453; 235 NW 217 (1931); *Todd v Textron, Inc*, 140 Mich App 412; 364 NW2d 718 (1985).

Plaintiff contends that an analysis of the statutory construction of § 1 of the TRZA clearly reveals that the legislative grant of authority to a township is limited to the regulation of land development and does not extend to the regulation of the riparian rights of a landowner, especially when such regulation attempts to limit access to navigable waters or the number of dock slips a riparian landowner may build or possess. Plaintiff contends that the sections of the Hayes Township zoning ordinance which attempt to limit dockage and access are beyond the authority granted by the TRZA. We agree. MCL 125.271; MSA 5.2963(1) provides as follows:

> The township board of an organized township in this state may provide by zoning ordinance for the regulation of land development and the establishment of districts in the portions of the township outside the limits of cities and villages which regulate the use of land and structures; to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land; to insure that use of the land shall be situated in appropriate locations and relationships; to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities; to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements; and to promote public health, safety, and welfare. For these purposes, the

township board may divide the township into districts of such number, shape, and area as it considers best suited to carry out this act. The township board of an organized township may use this act to provide by ordinance for the regulation of land development and the establishment of districts which apply only to land areas and activities which are involved in a special program to achieve specific land management objectives and avert or solve specific land use problems, including the regulation of land development and the establishment of districts in areas subject to damage from flooding or beach erosion, and for that purpose may divide the township into districts of a number, shape, and area considered best suited to accomplish those objectives. Ordinances regulating land development may also be adopted designating or limiting the location, the height, number of stories, and size of dwellings, buildings, and structures that may be erected or altered, including tents and trailer coaches, and the specific uses for which dwellings, buildings, and structures, including tents and trailer coaches, may be erected or altered; the area of yards, courts, and other open spaces, and the sanitary, safety, and protective measures that shall be required for the dwellings, buildings, and structures, including tents and trailer coaches; and the maximum number of families which may be housed in buildings, dwellings, and structures, including tents and trailer coaches, erected or altered. The provisions shall be uniform for each class of land or buildings, dwellings, and structures, including tents and trailer coaches, throughout each district, but the provisions in 1 district may differ from whose in other districts. A township board shall not regulate or control the drilling, completion, or operation of oil or gas wells, or other wells drilled for oil or gas exploration purposes and shall not have jurisdiction with reference to the issuance of permits for the location, drilling, completion, operation, or abandonment of those wells. The jurisdiction relative to wells shall be vested exclusively in the supervisor

of wells of this state, as provided in Act No. 61 of the Public Acts of 1939, being sections 319.1 to 319.27 of the Michigan Compiled Laws.

It is a general rule of statutory construction that the inclusion of a thing by specific mention excludes that which is not mentioned. The very grant of specific powers under restrictions is an exclusion of other powers in reference to the same subject matter not granted by the Legislature. *Sebewaing Industries, Inc v Village of Sebewaing*, 337 Mich 530, 546; 60 NW2d 444 (1953); *State Farm Mutual Automobile Ins Co v Ruuska*, 90 Mich App 767, 783; 282 NW2d 472 (1979), aff'd 412 Mich 321; 314 NW2d 184 (1982). The TRZA expressly lists the specific subjects which a township may regulate. Section 1, as quoted above, states that townships may provide by zoning ordinance for the "regulation of land development," "establishment of districts," "regulate the use of land and structures," "limit the inappropriate overcrowding of land," etc. The only mention of "water" in § 1 is in the provision quoted above relevant to the "efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements."

The statute also states that special districts may be established which apply only to land areas subject to damage from flooding or beach erosion. The statute specifically mentions dwellings, buildings, structures, including tents and trailer coaches, yards, courts, open spaces, and number of families. There is no mention or reference to the regulation of waters, waterway access, dockage or boat usage. This Court is to assume that the express mention of any one thing in a statute implies the exclusion of other similar things. *Mich*

*Mutual Ins Co v Allstate Ins Co,* 146 Mich 475, 481; 382 NW2d 169 (1985), aff'd 426 Mich 346; 395 NW2d 192 (1986).

In urging us to interpret the TRZA as permitting the zoning of water and other riparian rights, the township relies upon § 3 of the TRZA, MCL 125.273; MSA 5.2963(3), which states that a zoning ordinance shall be "based upon a plan designed . . . to conserve natural resources and energy" and requires that reasonable consideration be given to natural resources. The township argues that Michigan's lakes and streams are natural resources and, therefore, § 3 of the TRZA authorizes zoning ordinances which regulate lakes and streams. However, unlike the township, we do not read § 3 of the TRZA as being a grant of power to the townships. Rather, our reading of § 3 is that it is one of restriction upon the zoning powers of a township by specifically requiring the township to give consideration to various factors, such as the impact upon the natural resources, before enacting a zoning ordinance. Even accepting the township's broad definition of "natural resources" to include lakes and streams, the fact that a township must consider the impact of a zoning ordinance upon lakes and streams does not necessitate the conclusion that townships have the authority to regulate lakes and streams by way of a zoning ordinance. For example, the zoning of *land* for industrial use may affect lakes and streams with respect to industrial pollution. Thus, consideration must be given to that affect by the township before zoning a parcel of land for industrial use.

The township also relies upon Const 1963, art 7, § 34, which provides that provisions of the constitution and statutes concerning townships shall be liberally construed in favor of the township and that powers granted to townships by the constitu-

tion and statutes shall include those powers fairly implied and not prohibited by the constitution. While that constitutional rule of construction must be kept in mind while interpreting the TRZA, it obviously does not give carte blanche to the township.

Even with the liberal construction of the provisions of the constitution in mind, we do not believe that the TRZA grants authority to townships to regulate or limit boat dockage construction or riparian access rights. After consideration of all the applicable rules of statutory construction, we can only conclude that the Legislature, in enacting the TRZA, granted authority to townships to zone land use but not water use or to regulate riparian rights. Accordingly, the provisions in the Hayes Township zoning ordinance which limit boat dockage and "funnel development," § 5.13(A) and (B), are invalid. Accordingly, the trial court was incorrect in determining that the ordinance was valid.

II

Plaintiff's second argument is that the subject matter of the Hayes Township zoning ordinance is preempted by the Michigan Inland Lakes and Streams Act, MCL 281.951 *et seq.*; MSA 11.475(1) *et seq.* While plaintiff's preemption argument appears at first blush to be valid, we note that this issue was not raised in the trial court. In light of our conclusion that the zoning ordinance is invalid under the TRZA, it is unnecessary to consider the preemption argument and we decline to do so.

III

The decision of the trial court is reversed and the matter is remanded to the trial court for

further proceedings consistent with this opinion. Costs to plaintiff.

D. E. HOLBROOK, JR., J., concurred.

McDONALD, J. *(dissenting)*. I respectfully dissent.

The majority concludes that the Township Rural Zoning Act does not grant appellee, Hayes Township, the power to regulate riparian rights by ordinance[1] because such authority is not specifi-

---

[1]

SECTION 5.13—SHORELAND PROTECTION STRIP

No building or structure, except docks or launch ramps, shall be erected closer than fifty (50) feet from the shoreline at normal high water level of any lake, stream or creek within the township. In addition, a strip of land thirty-five (35) feet wide from the normal high water mark bordering the body of water shall be maintained in trees and shrubs in their natural state. Trees and shrubs may be pruned, however, to afford a view of the water.

A. Limitation of Boat Dockage

Not more than one (1) mooring, slip or dock space for each one hundred (100) feet of lake frontage may be provided for mooring or dockage of boats in any zoning district in the Township.

B. Limitation of "Funnel Development"

Any development in any zoning district which shares a common lakefront or stream area may not permit more than one (1) single family home, cottage, condominium or apartment to the use of each one hundred (100) feet of lake or stream frontage in such common lakefront or stream area as measured along at the water's edge of normal high water mark of the lake or stream. This restriction is intended to limit the number of users of the lake or stream frontage to preserve the quality of the waters, and to preserve the quality of recreational use of all waters within the Township. This restriction shall apply to any parcel regardless of whether access to the water shall be gained by easement, common fee ownership, single fee ownership or lease.

The Zoning Board of Appeals may, upon petition and after notice and hearing as provided in Article VII, vary or modify the strict application of this provision if it shall determine that undue hardship will otherwise result and the spirit and intent of this Ordinance will be preserved by such variance or modification. The Board of Appeals may, as a condition of such variance or modification, impose such conditions upon the use of the lands and lakefront or streamfront as it shall deem necessary to preserve the spirit and intent of this Ordinance.

cally granted under MCL 125.271; MSA 5.2963(1). I disagree.

1963 Const, art 7, § 34, provides:

> The provisions of this constitution and law concerning counties, townships, cities and villages *shall be liberally construed in their favor.* Powers granted to counties and townships by this constitution and by law *shall include those fairly implied* and not prohibited by this constitution. [Emphasis added.]

Riparian rights should not be treated differently than any other rights arising out of the ownership or an estate in land. The Supreme Court in *Thompson v Enz,* 379 Mich 667, 677, 684; 154 NW2d 473 (1967), defines riparian land as a parcel of land which includes therein a part of or is bounded by a natural water course. Riparian proprietor is defined as a person who is in possession of riparian lands or who owns an estate therein. Lastly, riparian rights are defined as being certain interests in rights vested in the *shore* owner, which grow out of his special connection as an owner. These rights are common to all riparian owners on the same body of water and rest entirely upon the title in the fee to the *shore land.*

I believe it is clear that riparian rights arise out of the fee in land the same as other rights, such as rights to earth, stone, gravel, subterranean water, oil, gas and air space. I agree with the Maryland Court of Appeals which in *Harbor Island Marina Inc v Calvert County, Maryland, Bd of County Comm'rs,* 286 Md 303, 318-319; 407 A2d 738 (1979), recognized that riparian rights are analogous to other property rights. The court stated:

> This Court has previously recognized that riparian rights are "subject . . . to [the] general rules

and regulations [properly] imposed by the public authorities [as] necessary to protect the rights of the public.". . . . There is, therefore, really no reason why this right should be treated differently from the other privileges pertaining to the ownership of real property, including restrictions which are associated with validly enacted zoning laws.

In interpreting the Township Rural Zoning Act the majority follows the general rule of statutory construction that the inclusion of a thing by specific mention excludes that which is not mentioned. Thus the majority concludes that the absence of reference to regulation of waters, waterway access, dockage or boat usage, renders the ordinance in question outside the authority granted townships under the TRZA.

Such a construction is too narrow and contrary to the constitution's mandate to liberally construe laws in the township's favor. It is also contrary to the legislative intent expressed in the preamble to the TRZA:

> AN ACT to provide for the establishment in townships of zoning districts *within which the proper use of land and natural resources may be encouraged or regulated by ordinance,* and within which districts provisions may also be adopted designating the location of, the size of, *the uses that may be made of,* the minimum open spaces, sanitary, safety and protective measures that shall be required for, and the maximum number of families that may be housed in dwellings, buildings and structures, including tents and trailer coaches, that may be erected or altered after the effective date of this act.

In applying the majority's strict construction to other rights arising out of the ownership of land the townships could not regulate and control the

mining of sand, gravel, minerals, or air space within their boundaries as these rights are not specifically mentioned in the TRZA. Countless court decisions in this state conclude otherwise. The strict construction applied in this case would allow riparian owners unfettered use of their rights, free from local government control, and force their aggrieved neighbor riparian owners to look to the courts for relief on an individual basis. Such a situation would not only damage one of the state's most precious natural resources but would also overburden our judicial system.

A fair reading of the TRZA would grant the townships the right, among other rights, to regulate land *and the rights arising therefrom that are not specifically excluded by law.* If such was not the intent of the Legislature there would be no reason for the statute's specific prohibition of a township's right to regulate or control the exploration, drilling, completion or operation of oil and gas wells in the grant of authority under the act.

It is unfortunate that the Legislature did not provide a definitional section in the act. However, MCL 8.3; MSA 2.212 and MCL 8.3i; MSA 2.212(9) provide:

> In the construction of the statutes of this state the rules stated in sections 3a to 3w shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature.

> The words "land", "lands", "real estate" and "real property" mean lands, tenements and real estate, *and all rights thereto and interests therein.* [Emphasis added.]

The TRZA also allows the townships to regulate the use of buildings, dwellings and structures. The Inland Lakes and Streams Act, MCL 281.952(o);

MSA 11.475(2)(o), defines "structure" as including "a marina, wharf, *dock,* pier, dam, weir, stream deflector, breakwater, groin, jetty, sewer, pipeline, cable and bridge." (Emphasis added.)

Thus, it would appear that the Legislature when inclined to define "land" and "structure" included "riparian rights" and "docks" in said definitions.

In *Thompson, supra,* p 686, the Court divides riparian rights into two classes, natural and artificial. Natural rights are those rights which are basic to the survival of humans, such as to quench one's thirst and other household uses. These rights are described as having a preferred nonproratable position with respect to all other users rather than a correlative one. Artificial riparian rights are described as uses to increase one's comfort and are not essential to one's existence, such as recreational and commercial uses. Users for artificial purposes occupy a correlative status with other riparian owners in exercise of their riparian rights. Use for an artificial purpose must be (a) only for the benefit of the riparian land and (b) reasonable in light of the correlative rights of other proprietors. Justice BRENNAN in his dissent states that Michigan needs wise and forethinking legislation which will protect our lakes from overcrowding and the pollution which flows from immoderate uses, so that all of the people of the state, including riparian cottage owners, will be able to enjoy our great natural bounty for centuries to come. *Thompson, supra,* p 699. I believe local communities should be and are allowed to regulate artificial riparian rights. The ordinance in question is designed to regulate and control artificial riparian rights and if reasonable should be upheld.

Some would argue that such regulation lies exclusively with the state Legislature. I disagree.

The use and appreciation of riparian rights vary greatly from county to county throughout the state. The needs of heavy industry are not always consistent with those of the fisherman and nature lover. Thus regulation in general is best vested in the local governments. The TRZA grants that authority to the communities of Michigan.

There are exceptions to the grant of authority to townships. The state has specifically preempted local regulation and control in environmental areas which cross community lines. However, this writer is unaware of any legislation that specifically preempts local control and regulation over all riparian rights. It is difficult to imagine why the state would assume the heavy burden of determining the correlative rights among riparian owners on the thousands of lakes, streams and rivers in Michigan. The state's view of those correlative rights which are local in nature, as opposed to the community view, would be dim and difficult to weigh.

Plaintiff argues for the first time on appeal that the Hayes Township zoning ordinance is preempted by the Inland Lakes and Streams Act, MCL 281.951 *et seq.*; MSA 11.475(1) *et seq.* This issue was not raised in the pleadings or by motion in the court below, nor was it addressed by the trial court in its opinion of January 17, 1986. Thus this Court is precluded from considering the issue as it was raised for the first time on appeal. *Harris v Pennsylvania Erection & Construction,* 143 Mich App 790; 372 NW2d 663 (1985).

In summary, riparian rights are not different from any other rights that arise out of the ownership or an estate in land. Consequently those rights are subject to the regulation and control of the township under the authority of the Township Rural Zoning Act.

In the case at bar I have decided that appellee Hayes Township had the authority to regulate and control riparian rights under the TRZA. The questions whether appellee's ordinance is constitutional as drawn or was unconstitutionally applied are not before us and must be decided by the trial court after a full hearing. Should appellant challenge the constitutionality of the ordinance as drawn or applied and is successful, it has the burden of proof by a preponderance of the evidence to show that it's proposed use is reasonable. *Schwartz v City of Flint,* 426 Mich 295; 395 NW2d 678 (1986). In determining whether a use is reasonable the court must consider what the use is for, its extent, duration, necessity, and its application, the nature and size of the lake, and the several uses to which it is put, the extent of the injury to the one proprietor and the benefit to the other, and all other facts which may bear upon the reasonableness of the use. *Thompson, supra,* pp 687-688.

I would affirm the trial court's denial of summary disposition and remand for further hearing pursuant to this opinion.